Willie J. POLLARD, Plaintiff,

v.

MONTGOMERY COUNTY,
et al., Defendants.

No. Civ.A. 97–D–1321–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 31, 1999.

Russell T. Duraski, James M. Sizemore, Jr., Montgomery, AL, for plaintiff.

Thomas T. Gallion, III, Montgomery, AL, Tyron C. Means, Robert M. Wein-

berg, John W. Adams, Jr., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Sheriff D.T. Marshall's ("Defendant Sheriff") Motion For Summary Judgment ("Motion"), filed on June 3, 1999.[1] On June 22, 1999, Plaintiff filed a Submission Opposing Summary Judgment, which the court construes as a response to Defendant Sheriff's Motion ("Response"). On June 29, 1999, Defendant Sheriff filed a Reply And Objection To Plaintiff's Submission In Opposition To Motion For Summary Judgment ("Reply"), and on June 30, 1999, Defendant Sheriff filed a Corrected Reply And Objection To Plaintiff's Submission In Opposition To Motion For Summary Judgment ("Corrected Reply").[2] After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant Sheriff's Motion For Summary Judgment

---

1. The court notes that all of Plaintiff's claims against Defendant Montgomery County were dismissed by Order dated April 29, 1998. Nevertheless, Plaintiff reasserted claims against Montgomery County in its Amended Complaint, filed on May 8, 1998, in violation of Rule 15.1 of the United States District Court for the Middle District of Alabama Local Rules, which states in relevant part that "[a]ny amendment to a pleading ... must ... reproduce the entire pleading *as amended* ...." M.D.Ala. Local Rule 15.1 (emphasis added). Accordingly, the court again dismissed all claims against Montgomery County by Order dated June 18, 1998. Twice more, in his Second Amended Complaint, filed on October 14, 1998, and in his Third Amended Complaint, filed on November 23, 1998, Plaintiff reasserted claims against Montgomery County, thereby failing to comply with Local Rule 15.1. To avoid any confusion, the court once again finds that any and all of Plaintiff's claims against Montgomery County are due to be dismissed.

Therefore, the court finds that the Montgomery County Sheriff, in his official capacity, is the only remaining Defendant in this action. The court notes, however, that while Dan Jones was the Sheriff at the time this lawsuit was filed, D.T. Marshall has since succeeded Dan Jones as Sheriff. Therefore, pursuant to Fed.R.Civ.P. 25(d)(1), D.T. Marshall "is automatically substituted as a party" to this action. Fed.R.Civ.P. 25(d)(1).

2. Defendant Sheriff informs the court that he filed the Corrected Reply to correct certain "minor typos" and that it includes "no real substantive changes" to his Reply. (Cover Letter dated June 30, 1999, accompanying Corrected Reply.) Accordingly, the court relies on Defendant Sheriff's Corrected Reply, and not his Reply, in its consideration of the instant Motion For Summary Judgment.

Further, contained within Defendant Sheriff's Corrected Reply is Defendant Sheriff's Motion To Strike, wherein Defendant Sheriff moves to strike all arguments in Plaintiff's Response that relate to any theory that Plaintiff was wrongfully terminated from his employment in retaliation for protected activity. By Order entered on July 9, 1999, this court granted Defendant Sheriff's Motion To Strike Plaintiff's retaliatory discharge arguments. Accordingly, in its consideration of the instant Motion For Summary Judgment, the court disregards those portions of Plaintiff's Response which set forth such arguments.

is due to be granted and that this cause of action is due to be dismissed.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964, as amended in 1991). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

At all times relevant to this lawsuit, Plaintiff, who is black, was employed as a correctional officer with the Montgomery County Sheriff's Department ("Sheriff's Department"). (Third Am.Compl. ¶ 5.) During 1995, Plaintiff was employed both by the Sheriff's Department as a full-time correctional officer and by Winn Dixie as a part-time security guard.[3] (Pl.'s Aff. at 1; Resp.App. at 125.)

On or about September 29, 1995, all correctional officers, including Plaintiff, received from Chief Deputy Sheriff N.W. Ward a Sheriff's Department Memorandum regarding firearms and secondary employment ("Firearms Policy"). (*Id.*) Said Memorandum states, in relevant part:

> [T]he departmental Manual requires departmental approval of any outside employment. Effective immediately, no correctional officer will be permitted to work secondary employment in which he/she carries a weapon on the job unless he/she is Peace Officer POST-certified *and* current in being firearm-qualified with the Sheriff's Office. This applies whether the employee would be wearing his/her M[ontgomery] C[county] S[heriff's] O[ffice] uniform during the outside employment or not.
>
> This restriction is imposed to minimize the risk of injury to employees and the public, and minimize the risk of liability.

> \* \* \* \* \* \*

The Sheriff and Chief Deputy retain the discretion to deny an employee's request for outside employment which involves carrying a firearm, even if the employee is POST-certified and firearm-qualified.

(Resp.App. at 111 (emphasis in original).) Despite Plaintiff's having been POST-certified and firearm-qualified at the time of the issuance of said Memorandum (Resp.App. at 115), Plaintiff was denied permission to use a firearm in secondary employment and lost his part-time job as a result of such restriction. (Pl.'s Aff. at 2; Third Am.Compl. ¶ 17.)

On January 3, 1996, after his shift was over and while off duty, Plaintiff was asked to make a medical run with a prisoner.[4] (*Id.*) Plaintiff refused to make the run as a protest to the Firearms Policy, which he thought was unfair. (Compl. ¶ 17.) Plaintiff specifically states that "the reason for his refusal [was][ ] because of a new sheriff's department practice of denying to employees in his classification, but not in some other classifications, the right to carry a weapon while engaging in extra employment with private employers during time off from official duties." (*Id.*)

On or about January 5, 1996, the Sheriff's Department brought a disciplinary charge against Plaintiff because he "had declined to make an off-duty medical run with a prisoner."[5] (Pl.'s Aff. at 2.) Prior

---

3. Plaintiff was first employed by the Sheriff's Department on August 25, 1986 and by Winn Dixie in or about June 1989. (Resp.App. at 125, 129.)

4. While Plaintiff's claim that Defendant Sheriff retaliated against Plaintiff based upon Plaintiff's refusal to go on a medical run on January 3, 1996 was dismissed by the court in its Order entered on June 18, 1998, the factual allegations which make up said claim are relevant to the court's determination of Plaintiff's remaining claims of retaliation.

5. As part of the Appendix to his Response, Plaintiff includes three memoranda which set forth the circumstances surrounding both Plaintiff's refusal to go on the medical run

and the institution of disciplinary charges against Plaintiff. First, on January 3, 1996, Lieutenant Annie Pearl Findley informed Captain Gina M. Savage via memorandum that "Officer Pollard was given an order ... to take an inmate to Med One. Officer Pollard refused the order, saying he worked from 5:30 to 2 o'clock and he was off, that he did not have a part-time job." (Resp.App. at 113.) Lt. Findley also "request[ed] that Officer Pollard be taken before the board for insubordination." (*Id.*) Second, on January 4, 1996, Lieutenant Wanda J. Robinson informed Captain Savage via memorandum of the following:

> Lt. Findley informed me that Ofc. Pollard refused to go on a medical run. I ap-

to Plaintiff's having been asked to make the medical run, two other correctional officers, Officer Michael Foster and Officer Jessie Belser, had been asked to make the run and had refused. (Third Am.Compl. ¶ 17–18; Pl.'s Aff. at 2.) No disciplinary charges were brought against either Officers Foster or Belser. (*Id.*)

On January 31, 1996, with a disciplinary charge for insubordination pending against him, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant Sheriff, alleging race-based discrimination because of the Firearms Policy.[6] (Pl.'s Aff. at 2; Third Am. Compl. ¶ 18; Resp.App. at 125–26.) Specifically, Plaintiff alleged that Defendant Sheriff's Firearms Policy "had a disparate impact on black persons because the persons disqualified from secondary employment were disproportionately black and the persons favored by such a policy were disproportionately white." (Resp.App. at 125–26.) Plaintiff also charged that Defendant Sheriff's "acts were also intentionally discriminatory because of my race." (*Id.* at 126.) On or about February 14, 1996, the EEOC sent Defendant Sheriff a Notice of Charge of Discrimination along with a copy of Plaintiff's Charge, informing Defendant Sheriff about Plaintiff's January 31, 1996 race-based charge. (*Id.* at 127.)

Subsequently, on May 16, 1996, Plaintiff's Disciplinary Hearing ("Hearing") on the charges of insubordination was held before the Montgomery County Sheriff's Department Review Board ("Review Board"). (Third Am.Compl. ¶ 18; Hr'g Tr. at 5:5–19.) At said Hearing, Investiga-

tor Gunn presented to the Review Board his investigation report and evidence regarding the charge of insubordination against Plaintiff, testifying on direct examination that Captain Savage "said that some of the officers were upset because they weren't working at Winn Dixie, and because of this fact, they stated that they weren't going to give any overtime here at the job at the Correctional Facility." (Hr'g Tr. at 10:16–21.) Investigator Gunn testified both on direct and cross examination that Officers Foster and Belser were asked to make the medical run that Plaintiff was also asked to make. (*Id.* at 11:1–13 and 12:22 to 13:3.) Investigator Gunn further stated that he was not asked to investigate Officers Foster and Belser for insubordination or for not obeying a direct order and that he is not aware of any charges of insubordination that have been brought against Officers Foster and Belser. (*Id.* at 13:4–11.)

Officer Belser testified at the Hearing, providing the following information on direct examination concerning Lieutenant Robinson's request that he go on the medical run:

Q: Present at this time is Officer Belser. Mr. Belser will you tell us what took place on this date?

A: Lieutenant Robinson called and asked me if I would go on a medical run and *I explained to her that I pick my little girl up at school and she said okay.* That was basically it.

Q: What time did Lieutenant Robinson ask you?

---

proached Ofc. Pollard and asked him what was wrong, why he wouldn't go. Ofc. Pollard said that he worked from 5:30 to 2:00, no overtime, no parttime [sic].... I then informed Ofc. Pollard that transporting was a part of his job and to go on the medical run. Ofc. Pollard refused to go. I then asked Ofc. Pollard as well as Lt. Findley to come with me to Captain Savages' [sic] office.
(*Id.* at 114.) Third, on January 5, 1996, Captain Savage informed Chief Deputy Ward via

memorandum that "[o]n January 3, 1996 Officer Willie Pollard refused to obey a direct order that was given to him by Lt. Findley, Lt. Robinson, and by me. I request that he be brought before the disciplinary board on the charge of insubordination." (*Id.* at 112.)

6. Neither Officer Foster nor Officer Belser has filed an EEOC charge of discrimination against Defendant Sheriff. (Third Am.Compl. ¶ 18.)

A: It was approximately 1:30.

Q: And she was checking, at this time, to find someone to go on a medical run?

A: That's correct.

Q: And you told her you had already— you already had plans?

A: That's correct.

Q: She didn't order you?

A: No, she didn't.

(*Id.* at 15:11 to 16:2 (emphasis added).)

Officer Foster also testified at the Hearing, providing the following information on cross examination concerning Lieutenant Findley's request that he go on the medical run:

Q: Okay. You just told Lieutenant Findley you had something else to do that was more important to you than earning overtime?

A: Yes, *I had a doctors appointment that day.*

Q: And she said that's fine and left it at that?

A: No, she didn't say it was fine by her. I think she just said okay.

Q: To your knowledge no charges have been brought against [you] for not making that medical run, have the[y]?

A: No.

Q: You haven't been cited for insubordination or for disobeying a direct order for not making that run, have you?

A: No.

(*Id.* at 23:17 to 24:6 (emphasis added).)

At the conclusion of the Hearing, Captain Norred stated the following regarding potential discipline of Plaintiff:

In determining whether the charges are valid the Board will consider only evidence that has been offered during this hearing. If the Board recommends that the charges be sustained, the Board may then consider your entire employment history with this department.

In making a recommendation as to appropriate discipline, *any discipline will be made according[ ] to the Progressive Discipline Guidelines in the Policy and Procedure Manual.* The [B]oard will make a recommendation to the Sheriff and the Sheriff has final authority in determining both the validity of the charges and if the charges are sustained, the appropriate discipline to impose.

(*Id.* at 90:3–21 (emphasis added).)

According to the Montgomery County Sheriff's Department Manual of Policies and Procedures, to which Captain Norred refers in the foregoing paragraph, *"[a]ny employee of the department may be made the subject of disciplinary action for* the commission of any prohibited act, for incompetence, *insubordination,* inefficiency, or for failure to observe departmental policies and procedures." (Resp.App. at 119, § 2.45(B)(1) (emphasis added).) In addition to insubordination, "failure to comply with written or verbal orders" is also listed as a specific cause for disciplinary action. (*Id.* at 120, § 2.45(D)(5) and (16).) Said "Disciplinary Action may take the form of an oral reprimand, a written reprimand, suspension without pay, a reduction in pay grade, a demotion, or dismissal." (*Id.* at 121, § 2.45(F).)

On June 6, 1996, Plaintiff was suspended without pay for ten days, effective June 10, 1996. (Pl.'s Aff. at 2; Third Am.Compl. ¶ 18.) On September 19, 1996, Plaintiff filed a second Charge of Discrimination with the EEOC against Defendant Sheriff, alleging discrimination in the form of retaliation.[7] (Resp.App. at 128.) Specifically, Plaintiff alleged the following:

I was hired with the [ ] [Montgomery County Sheriff's Department] on August 25, 1986 as a Correctional Officer. On or about June 10, 1996, I was disciplined by the employer.

I was informed by Dan Jones, Sheriff, that I was *suspended for ten days with-*

---

7. Plaintiff's lawsuit is predicated upon this second Charge. Plaintiff did not file a lawsuit

in connection with his first Charge, alleging race-based discrimination.

*out pay because the employer's Disciplinary Board had found me guilty of insubordination and refusing a direct order.*

I believe that I have been discriminated against in retaliation for having filed a previous EEOC charge of discrimination against the employer on January 31, 1996 (# 130 96 1006), in violation of section 704(a) of Title VII of the Civil Rights Act of 1964, as amended. I am aware of similarly situated Correctional Officers, who have not filed EEOC charges or otherwise protested unlawful employment discrimination, who have committed similar offenses but have not been suspended by the employer.

(*Id.* at 129 (emphasis added).) On or about September 19, 1996, the EEOC sent Defendant Sheriff a Notice of Charge of Discrimination along with a copy of Plaintiff's Charge, informing Defendant Sheriff about Plaintiff's September 19, 1996 retaliation-based charge. (*Id.* at 128.)

On September 2, 1997, Plaintiff filed the instant action. The court notes that the remaining claims in this case consist of Plaintiff's Title VII claims of retaliation discrimination against Defendant Sheriff, in his official capacity, as set forth in Count Two of Plaintiff's Third Amended Complaint, with the exception of the retaliation claim in ¶ 17 of said count.[8]

Specifically, Plaintiff asserts five specific claims of retaliation in his Third Amended Complaint. First, Plaintiff claims that,

"[i]n retaliation for filing the EEOC [ ] [Charge], Plaintiff was singled out by Defendant [ ] [Sheriff] for a 10 day suspension without pay effective June 10, 1996, while the other officers who had refused to make the medical run, but had not filed an EEOC [ ] [Charge], were not disciplined." (Third Am.Compl. ¶ 18.)

Second, Plaintiff contends that he has been subjected to an "increase in disciplinary actions ... because Plaintiff filed his EEOC [ ] [Charge]." (*Id.* ¶ 19(c).) Specifically, during his approximately ten years of service as a correctional officer prior to January 3, 1996, Plaintiff received one written disciplinary action. (*Id.* ¶¶ 11, 19(a).) However, since his ten-day suspension without pay, Plaintiff has incurred the following four written disciplinary actions: (1) on or about January 23, 1997, Captain Savage issued Plaintiff a written disciplinary action for taking a non-eligible inmate outside (*Id.* ¶ 19(a)(i)); (2) on or about April 28, 1998, Plaintiff received written charges claiming that Plaintiff assaulted an inmate on or about May 28, 1997, an incident that Plaintiff describes as his having been assaulted by an inmate[9] (*Id.* ¶ 19(a)(ii)); (3) on or about September 30, 1997, shortly after the filing of this lawsuit, Lieutenant Robinson issued Plaintiff a written reprimand for becoming loud and agitated (*Id.* ¶ 19(a)(iii)); and (4) on or about February 17, 1998, reports of an incident relating to which Lieutenant Findley accused Plaintiff of "certain unspecified

8. Plaintiff's retaliation claim in ¶ 17 of Count Two was dismissed by Order of the court entered on June 18, 1998. The other three counts in this case have all been dismissed as follows. Plaintiff's Title VII claims against Defendant Montgomery County in Plaintiff's original Complaint were dismissed by Order of the court entered on April 29, 1998. Count One of Plaintiff's Amended Complaint, which the court construed as an impermissible reassertion of Plaintiff's claims against Defendant Montgomery County, was originally dismissed by Order of the court entered on June 18, 1998. Count Three of Plaintiff's Third Amended Complaint, asserting racial discrimination claims under 42 U.S.C. § 1981 against Defendant Sheriff, was dismissed by Order of the court entered on July 9, 1999.

Count Four of Plaintiff's Second Amended Complaint, asserting claims under the Fair Labor Standards Act against Defendant Sheriff, was dismissed by Order of the court entered on November 23, 1998, which granted Plaintiff's Motion For Leave To Amend, wherein Plaintiff voluntarily dismissed Count Four.

9. Plaintiff was terminated as a result of this incident, which the Sheriff's Department characterizes as one during which Plaintiff "repeatedly struck an inmate with a mop wringer." (Mot. at 1–2.) The issue of retaliatory discharge is not before the court. (*See* Order entered July 9, 1999 (granting Defendant Sheriff's Motion To Strike Plaintiff's retaliatory discharge arguments).)

improprieties arising out of the refusal of certain inmates to submit to a lock down" were placed in Plaintiff's personnel file (*Id.* ¶ 19(a)(iv)). In addition to the four written disciplinary actions, sometime after June 1996 and before March 1997, Plaintiff received an oral reprimand from Captain Savage for leaving a training session early. (*Id.* ¶ 19(b).)

Third, Plaintiff contends that, as a result of filing the EEOC Charge, Defendant Sheriff placed him on "administrative leave." (*Id.* ¶ 20.) According to Plaintiff, administrative leave typically means leave with pay. (*Id.*) Plaintiff "was singled out for different treatment, however, and instead of leave, was assigned by Defendant [ ] [Sheriff] to a control booth because he had filed the EEOC [ ] [Charge]. Other officers who engaged in the same activity, and other officers who were put on 'administrative leave' were not assigned to a control booth, but were treated much less harshly." (*Id.*)

Fourth, Plaintiff claims that, because he filed his EEOC Charge, his "requests to use his accrued vacation time have been denied by Defendant [Sheriff] . . . while others have taken vacation time with approval." (*Id.* ¶ 21.) Fifth, Plaintiff contends that, because he filed his EEOC Charge, he has been required "to produce a doctor's excuse to use any of his sick leave, while other employees are allowed up to two (2) days of sick leave without documentation." (*Id.* ¶ 22.)

Defendant Sheriff moves for summary judgment on all of Plaintiff's remaining claims of retaliation discrimination. The court now addresses Defendant Sheriff's Motion.

## DISCUSSION

Title VII protects employees engaging in statutorily protected activities, such as the filing of a charge with the EEOC, against retaliation discrimination by an employer. *See* 42 U.S.C. § 2000e–3(a). Specifically, § 704(a) of Title VII prohibits an employer from engaging in retaliatory conduct against an employee under the following circumstances:

> It shall be an *unlawful employment practice for an employer to discriminate against any of his employees* . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or *because he has made a charge,* testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (emphasis added).

■ A plaintiff in a Title VII action may attempt to demonstrate retaliation discrimination by offering either direct or circumstantial evidence. *See Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir. 1999) (citing *Hill v. Metropolitan Atlanta Rapid Transit Auth.,* 841 F.2d 1533, 1539 (11th Cir.), *modified,* 848 F.2d 1522 (11th Cir.1988)). Here, Plaintiff states that "there is direct evidence that a ten (10) day suspension without pay imposed on [Plaintiff] Officer Pollard by Defendant [Sheriff] was not completely unrelated to Officer Pollard's protected activity in filing an EEOC complaint addressing the disparate impact on black persons of a personnel policy of Defendant." (Resp. at 4, 12.) The court disagrees with Plaintiff's characterization of the evidence in this case.

The Eleventh Circuit has defined "direct evidence" as:

> [E]vidence, which if believed, proves existence of fact in issue without inference or presumption. Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence. In a long line of cases, this Court has found direct evidence where actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.

*Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir.1997) (citations, quotations, and brackets omitted) (emphasis

added); *see also Schoenfeld,* 168 F.3d at 1266. That is, "direct evidence is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." *Schoenfeld,* 168 F.3d at 1266 (quoting *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989)).

However, "[i]f an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence." *Id.* (citing *Burrell v. Board of Trustees of Ga. Military College,* 125 F.3d 1390, 1393 (11th Cir.1997)). "Circumstantial evidence" is defined as "testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved" or "evidence of facts or circumstances from which the existence or nonexistence of fact in issue may be inferred." Black's Law Dictionary 243 (6th ed.1990).

Here, the court finds that, despite his arguments to the contrary, Plaintiff's evidence of alleged retaliation consists of circumstantial, rather than direct, evidence. For example, Plaintiff fails to present any direct evidence in the form of actions or statements of Defendant Sheriff that reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation of which Plaintiff complains. *See Merritt,* 120 F.3d at 1189. Further, Plaintiff offers no blatant remarks or actions the intent of which could be nothing other than to discriminate on the basis of some impermissible factor. *See Schoenfeld,* 168 F.3d at 1266. Rather, Plaintiff offers various disciplinary actions to which he was subjected and claims them to be direct evidence of retaliation discrimination on the part of Defendant Sheriff. The court finds Plaintiff's evidence of alleged retaliation to be circumstantial in that the only means by which to demonstrate discrimination by examining said evidence is to draw inferences, make presumptions, and otherwise attempt to link the adverse disciplinary actions to Plaintiff's having filed an EEOC Charge. Accordingly, although Plaintiff may not realize what type of evidence he presents to the court, the court finds that Plaintiff attempts to prove retaliation discrimination on the part of Defendant Sheriff through the use of circumstantial evidence.

"When a plaintiff attempts to prove intentional discrimination in violation of Title VII using circumstantial evidence, we apply the now familiar shifting burden framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)." *Schoenfeld,* 168 F.3d at 1267. "Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Eskra v. Provident Life & Acc. Ins. Co.,* 125 F.3d 1406, 1411 (11th Cir. 1997)). "If he meets that burden, then an inference arises that the challenged action was motivated by a discriminatory intent." *Id.* (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir.1989)). "The burden then shifts to the employer to 'articulate' a legitimate, non-discriminatory reason for its action." *Id.* (citing *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089). Said burden is a burden of production, and the employer need not persuade the court that it was actually motivated by the reason advanced. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. "If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really pretext for unlawful discrimination." *Schoenfeld,* 168 F.3d at 1267 (citing *Burdine,* 450 U.S. at 255–56, 101 S.Ct. 1089).

■ To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered adverse employment action; and (3) the adverse employment action was causally related, or

linked, to the protected activity. *See Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir.1998); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir.1998); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir.1997); *see also Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir.1999) (breaking down causal link element of prima facie case also to include requirement that employer must have been aware of plaintiff's engagement in protected activity). In the instant case, Plaintiff alleges that Defendant Sheriff retaliated against him because he filed an EEOC charge against Defendant Sheriff. (Third Am. Compl. at Count Two.) Defendant Sheriff concedes that Plaintiff has established the first two elements of a prima facie case of retaliation, agreeing that Plaintiff both engaged in statutorily protected activity [10] and suffered adverse employment action.[11] (Mot. at 4.) Specifically, Defendant Sheriff states that "Sheriff does not dispute that Mr. Pollard's filing of the EEOC charge in January 1996 would have been protected activity under Title VII. And this Court has already held that various disciplinary actions taken against Mr. Pollard since that time *could* constitute 'adverse employment actions,' citing as authority *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir.1998)." (*Id.* at 4 (emphasis in original).)

Therefore, one issue before the court is whether Plaintiff has met the third element of a prima facie case of retaliation, whether Plaintiff has established that the adverse employment action was causally related, or linked, to the protected activity.

*See Wideman*, 141 F.3d at 1454. The court, however, need not decide the causation issue in its resolution of the instant action because the court finds that Defendant Sheriff offers legitimate, non-discriminatory reasons for its actions and that Plaintiff fails to meet his burden of demonstrating that the proffered reasons are a pretext for unlawful discrimination. Accordingly, the court assumes, without deciding, that Plaintiff establishes the causal link requirement and, therefore, a prima facie case of Title VII retaliation discrimination.

 Because Plaintiff, based on the court's assumption, establishes a prima facie case of retaliation discrimination, thereby creating an inference that Defendant Sheriff's actions were motivated by discriminatory intent, the burden of production shifts to Defendant Sheriff to articulate a "legitimate, non-discriminatory reason for its actions." *Schoenfeld*, 168 F.3d at 1267. In other words, Defendant Sheriff must rebut the presumption of discrimination by producing evidence that Plaintiff was disciplined for a legitimate, non-discriminatory reason. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. Defendant Sheriff, however, need not persuade the court that he was actually motivated by the proffered reasons. (*Id.*) The court finds that Defendant Sheriff has met its burden, having articulated legitimate, non-discriminatory reasons for his various adverse employment actions affecting Plaintiff.

 First, regarding Plaintiff's ten-day suspension, the court finds that Defendant

---

10. Specifically, in its June 18, 1999 Memorandum Opinion And Order, the court found that "Plaintiff's belief that the employment practice complained of in his January 31, 1996 EEOC Charge of Discrimination had a disparate impact on black employees in violation of Title VII was reasonable" and, therefore, that "Plaintiff's participation in an EEOC proceeding, namely filing a charge of discrimination with the EEOC, is a 'statutorily protected activity.' " (June 18, 1999 Order at 11.)

11. Also in its June 18, 1999 Memorandum Opinion And Order, the court found that Plaintiff's ten-day disciplinary suspension without pay "qualifies as an adverse employment decision." (June 18, 1999 Order at 11–12.) Further, the court found that, "considering Plaintiff's allegations concerning vacation time and sick leave in conjunction with his allegations concerning the ten-day suspension, Plaintiff has alleged facts sufficient to establish that he suffered an adverse employment decision for purposes of stating a retaliation claim." (*Id.* at 16.)

Sheriff offers legitimate, non-discriminatory reasons for having imposed Plaintiff's ten-day suspension and claims that Plaintiff was not disciplined more severely than other similarly situated, non-protesting employees. (Mot. at 9–13.) Specifically, Defendant Sheriff argues that Plaintiff and Officers Belser and Foster were not similarly situated because Officers Belser and Foster . . .

... tendered legitimate excuses as to why they could not go [on the medical run]: they each had prior commitments which they shared as reasons why they could not go. (Plaintiff) Pollard was merely being an obstructionist as a means of voicing "his opposition to the new employment practice [Firearms Policy]." That does not make him similarly situated for purposes of analysis of a retaliation claim.

(*Id.* at 11.) Officer Belser testified that he explained to Lieutenant Robinson that he was unable to go on the medical run because he "pick[s][ ][his] little girl up at school and [Lt. Robinson] said okay." (Hr'g Tr. at 15:14–17.) Likewise, Officer Foster testified that he explained to Lieutenant Findley that he could not go on the medical run because he "had a doctors appointment that day." (*Id.* at 23:17–20.) Defendant Sheriff argues that "[Officers] Foster and Belser were not brought before Captain Savage, nor ordered to go," whereas "[f]ollowing his refusal to go, [Plaintiff] Pollard was given a direct order by Captain Gina Savage, which he refused. Following his refusal to obey Capt. Savage's direct order, he was charged with insubordination." (*Id.*)

The court agrees with Defendant Sheriff and finds that Officers Belser and Foster were not similarly situated with Plaintiff. Indeed, Officers Belser and Foster offered acceptable excuses to their superiors for being unable to go on the medical run, whereas Plaintiff refused a direct order of his superiors. According to Captain Savage, . . .

... when Lt. Findley and then—Lt. Robinson brought Mr. Pollard to me, I gave Mr. Pollard a direct order to go on the medical run. Mr. Pollard said something to the effect of "I work from 5:30 to two. No part-time, no overtime." At that point, I dismissed Mr. Pollard and we made other arrangements for the medical run. I have never had an officer under my command refuse a direct order to go on a medical run before. For that, Mr. Pollard was charged with insubordination and failure to comply with a verbal order. He was disciplined with a ten day suspension without pay.

(Savage Aff. ¶ 10.)

In addition to opposing Plaintiff's allegation that Officers Belser and Foster were similarly situated with Plaintiff, Defendant Sheriff argues that "other officers who committed comparable infractions and offenses were punished or disciplined similarly." (Mot. at 12.) In support of this contention, Defendant Sheriff presents to the court examples of other officers who were suspended without pay in 1995 and 1996 for various offenses, including: violations of standards of conduct for detention facility employees; neglect or dereliction of duty; failure to comply with written or verbal orders; violations of the code of ethics; willful or neglectful mistreatment of a prisoner; violation of racial and sexual harassment policies; and conduct unbecoming a corrections officer. (Savage Aff. ¶ 11.) Further, Defendant Sheriff notes that, for a first offense on a charge of insubordination, the Sheriff's Department's "Progressive Discipline Guidelines" in effect at the time of Plaintiff's suspension call for either "suspension without pay" or "dismissal depending upon the severity of the offense." (*Id.*) Said Guidelines call for dismissal for a second offense of insubordination. (*Id.*)

■ Second, Defendant Sheriff offers the sworn testimony of Captain Savage to demonstrate that Plaintiff was no more subject to disciplinary write-ups than any other officer at the Sheriff's Department. (Savage Aff. ¶ 12.) As with the foregoing examples of various disciplinary suspensions among the officers, Defendant Sher-

iff offers numerous specific examples of written and oral reprimands received by officers who had not filed EEOC charges. (*Id.* ¶¶ 13–14.) Captain Savage states that said examples "demonstrate that Mr. Pollard was clearly not alone in being the subject of disciplinary write-ups.... The filing of EEOC charges was simply irrelevant to whether an individual had an oral or written reprimand, or letter of concern, admonishment or reprimand." (*Id.* ¶ 15.)

■ Third, Defendant Sheriff claims that Plaintiff's assignment to control booth duty was not punishment or discipline, but rather an administrative decision pending an investigation into an incident during which Plaintiff allegedly struck an inmate with a mop wringer. (Savage Aff. ¶ 6(a).) Captain Savage offers the following legitimate, non-discriminatory reasons for Plaintiff's administrative assignment:

> Depending upon the complaint and type of incident, it is not at all uncommon to make and [sic] administrative assignment of an officer to the control booth pending investigation, particularly where allegations of inmate abuse are made.

> Depending upon the severity of the incident, and the likelihood that the allegations are true, placement of the officer in the control booth following allegations of inmate abuse has been found to be in the best interest of the inmates, or detainees, the officers, and the Department. This is because there are no secrets in a cellblock, and it quite frequently happens that word will get around the cellblocks that an inmate has accused an officer of assault or abuse. When that happens, the number of inmate complaints against the officer rise [sic] substantially. With an officer away from direct contact with the inmates, there is no opportunity for inmates to complain against the officer subsequent to the original incident and pending its investigation. Stated differently, *it is for the officer's own protection and ben-*

*efit to have limited or restricted contact with the inmates.*

(*Id.* ¶¶ 6(b) and (c) (emphasis added).)

■ Fourth, Defendant Sheriff contends that Plaintiff's request to use a week's accrued vacation time was denied because there were not enough officers available during that particular week due to the attendance by many officers at a scheduled class. (Mot. at 18.) Indeed, Captain Robinson stated that during the week Plaintiff requested vacation, there were several officers ...

> ... on duty, and being paid, but not available to work in the jail, that week. In fact, that week I had to call in officers to work overtime. The week Officer Foster took off, there were no classes. Furthermore, vacation or annual leave is usually scheduled long in advance of when it is taken, in order that we can plan duty rosters, which means that Officer Foster had scheduled his vacation well in advance of taking it. As I recall, [Plaintiff] Mr. Pollard's request to take annual leave was a "last minute" thing that simply came at a bad time. I repeatedly went out of my way to attempt to accommodate Mr. Pollard's requests, when they were reasonable. This instance was not one. The denial of vacation leave that one week was in no way related to any EEOC charge filed by Mr. Pollard.

(Robinson Aff. ¶ 10.)

■ Fifth, regarding his claim that Plaintiff was required to produce a doctor's note to use any of his sick leave, while other employees are allowed up to two days without documentation, Defendant Sheriff offers the following:

> [Plaintiff] [ ] fails to identify who he is referring to, under what circumstances, suggests no connection between that one occurrence, if it even happened, and the filing of his un-pursued EEOC charge a year and half earlier. It is believed he is referring to Lt. Findley, but she has no recollection of the incident.

(Mot. at 19; Findley Aff. ¶ 9.) Further, Lt. Findley stated that if she required Plaintiff to have a doctor's note...

> ... it had nothing whatsoever to do with his filing of any EEOC charges. Nowadays, all officers are required to bring a doctor's excuse if they are out more than a day. If Mr. Pollard was told that he needs a doctor's excuse, then all officers would have been told that. He would not have been singled out by me for differential treatment.

(Findley Aff. ¶ 9.)

As further support that Defendant Sheriff's reasons for taking certain actions regarding Plaintiff were legitimate and non-discriminatory, Captain Savage, Captain Robinson, and Lieutenant Findley all offered sworn testimony, stating that the allegations that they or officers under their command "may have been instructed or encouraged in some way by [Defendant] Sheriff [ ] to treat [Plaintiff] Mr. Pollard differently or to discriminate against him as a result of the filing of the EEOC charge or charges or litigation against the Department" are untrue. (Savage Aff. ¶ 2; Robinson Aff. ¶ 2; Findley Aff. ¶ 2.) Captain Savage, Captain Robinson, and Lieutenant Findley also denied that they discriminated against Plaintiff ...

> ... with respect to any term or condition of his employment, including oral or written reprimands, letters of concern, requests for investigation, placement in

the control booth, use of vacation leave or sick leave.... Any disciplinary action [ ][we] ever took with respect to Mr. Pollard was, in [ ][our] belief, warranted by Mr. Pollard's behavior at the time, unrelated to the filing of any EEOC charge or litigation, and was not influenced in any way by [Defendant] Sheriff.

(*Id.* ¶ 3.)

The court finds that the foregoing proffers by Defendant Sheriff conclusively establish legitimate, non-discriminatory reasons for each action that constitutes the basis for Plaintiff's claims of retaliation discrimination. Indeed, the court notes that Defendant Sheriff has engaged in an exhaustive and extensive presentation of evidence in order to meet its burden.

■ Because Defendant Sheriff has articulated legitimate, non-discriminatory reasons for its disciplinary and other actions, the burden shifts back to Plaintiff to show that Defendant Sheriff's reasons are actually pretext, or a cover, for unlawful retaliation discrimination. Defendant Sheriff argues that "defendant has already rebutted any prima facie case Mr. Pollard may have tendered, and Mr. Pollard has yet to offer proof of pretext on this issue." (Reply at 10.) The court finds that Plaintiff fails to offer the court any evidence of pretext.[12]

---

12. As already noted by the court, Plaintiff sets forth five claims of retaliation in Count Two of his Third Amended Complaint, thereby challenging a series of disciplinary actions imposed by Defendant Sheriff. Defendant Sheriff addresses each of these five claims in its Motion For Summary Judgment. Plaintiff, however, only addresses the first of the five claims in his Response, arguing that his ten-day suspension was in retaliation for his having filed an EEOC Charge.

Plaintiff, however, fails to address the other four claims from his Third Amended Complaint. The court notes that Fed.R.Civ.P. 56(e) prohibits the nonmoving party from resting solely upon allegations or denials of its pleadings, stating in relevant part:

> When a motion for summary judgment is made and supported as provided in this

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response,* by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*

Fed.R.Civ.P. 56(e) (emphasis added). Accordingly, the court finds that Plaintiff's other four claims of retaliation discrimination are due to be dismissed because of Plaintiff's failure to address said clams in his Response. In further support of said finding, the court notes that Plaintiff's conclusory allegations of discrimination fail to demonstrate that Defendant Sheriff's legitimate, non-discriminatory reasons for its actions are pretextual.

■ The court attempts to discern why Plaintiff fails to offer evidence of pretext. Plaintiff specifically asserts that his allegations of retaliation in the form of a ten-day suspension and other disciplinary actions are established through the presentation of direct evidence, as opposed to circumstantial evidence.[13] (Resp. at 8, 12.) Such a reliance on direct evidence does not necessitate a *McDonnell Douglas* burden shifting analysis. *Cf. Schoenfeld*, 168 F.3d at 1267. Therefore, Plaintiff attempts to demonstrate that Defendant Sheriff engaged in retaliation discrimination against him through the presentation of what Plaintiff mistakenly believes to be direct evidence.[14] Immediately thereafter, Plaintiff stops his analysis short of assuming that Defendant Sheriff may meet his burden of producing legitimate, non-discriminatory reasons for having imposed the disciplinary actions on Plaintiff and, consequently, does not offer the court any evidence of pretext on the part of Defendant Sheriff.

■ The court notes, however, that evidence used to establish a prima facie case of retaliation discrimination may also be used to establish pretext. *See Schoenfeld*, 168 F.3d at 1269. Therefore, despite Plaintiff's failure to apply the burden shifting analysis or to discuss the issue of pretext, the court examines the circumstantial evidence of retaliation set forth by Plaintiff in support of his prima facie case to determine whether said evidence establishes pretext. In so doing, the court finds that said evidence fails to support an inference that retaliatory motive played some part in the adverse treatment of Plaintiff and, therefore, that Plaintiff fails to carry his burden of establishing that Defendant Sheriff's reasons are pretextual.

First, regarding Plaintiff's ten-day suspension, Plaintiff fails to demonstrate that Defendant Sheriff either treated Plaintiff differently from similarly situated non-protesting employees or deviated from the Sheriff's Department's written procedures to carry out adverse disciplinary action against him. Second, Plaintiff fails to demonstrate that the various written and oral reprimands he received were a pretext for retaliation discrimination. Third, Plaintiff fails to rebut Defendant Sheriff's explanation for the reassignment of Plaintiff to control booth duty. Fourth, Plaintiff offers no response to Defendant Sheriff's explanation that the refusal of Plaintiff's vacation request was due to a staff shortage during the requested week off. Fifth, Plaintiff likewise fails to rebut Defendant Sheriff's explanation regarding Plaintiff's use of sick leave.

The court further notes that the evidence offered by Plaintiff in opposition to Defendant Sheriff's Motion For Summary Judgment consists completely of conclusory allegations of discrimination. Further, said evidence falls far short of raising any inference of pretext of intentional discrimination where, as here, Defendant Sheriff has offered extensive evidence of legiti-

13. Plaintiff confuses the distinction between direct and circumstantial evidence even further. Although Plaintiff asserts that there is direct evidence of retaliation discrimination, Plaintiff claims that said evidence establishes the disputed causation element of a prima facie case of retaliation discrimination. In so arguing, Plaintiff has improperly commingled the methodology for proving retaliation with direct evidence, which does not require a prima facie case analysis, and for proving retaliation with circumstantial evidence, which does require a prima facie case analysis. By definition, direct evidence of retaliation discrimination cannot be rebutted because there can be no legitimate, non-discriminatory reason for discrimina-

tion. Stated another way, direct evidence generally is offered in lieu of a prima facie case, whereas the establishment of a prima facie case is accomplished with circumstantial evidence.

The court notes that, in support of his stricken retaliatory discharge claim, Plaintiff applies the *McDonnell Douglas* burden shifting scheme, recognizing that proof of such a discharge would have to come in the form of circumstantial evidence. (Resp. at 8.)

14. The court noted earlier that none of the evidence offered by Plaintiff constitutes direct evidence; rather, said evidence is circumstantial.

mate, non-discriminatory reasons for disciplining Plaintiff with a ten-day suspension and for otherwise discriminating against Plaintiff. Indeed, the Eleventh Circuit has held that " 'conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext of intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions.' " *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073–74 (11th Cir.1995) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988)).

Therefore, because Defendant Sheriff has articulated legitimate, non-discriminatory reasons for its disciplinary actions against Plaintiff, and Plaintiff has failed to show that these reasons are pretextual, the court finds that there is no genuine issue as to any material fact and that Defendant Sheriff is entitled to judgment as a matter of. law. Therefore, the court finds that Defendant Sheriff's Motion For Summary Judgment is due to be granted and that Plaintiff's five claims of retaliation against Defendant Sheriff are due to be dismissed.

### ORDER

Based upon the foregoing, it is CONSIDERED and ORDERED that Plaintiff's claims against Defendant Montgomery County be and the same are hereby DISMISSED.

It is further CONSIDERED and ORDERED that Defendant Sheriff D.T. Marshall's Motion For Summary Judgment be and the same is hereby GRANTED and that Plaintiff's claims against Defendant Sheriff be and the same are hereby DISMISSED.

Accordingly, it is further CONSIDERED and ORDERED that this cause of action be and the same is hereby DISMISSED.